# IN THE SUPREME COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| STEPHEN J. STINSMAN, | § | |
| | § | No. 578, 2014 |
| Defendant Below- | § | |
| Appellant, | § | Court Below: Superior Court |
| | § | of the State of Delaware in and |
| v. | § | for New Castle County |
| | § | |
| STATE OF DELAWARE, | § | No. 1209020601 |
| | § | |
| Plaintiff Below- | § | |
| Appellee. | § | |

Submitted: August 26, 2015
Decided: September 9, 2015

Before **HOLLAND**, **VALIHURA**, and **VAUGHN**, Justices.

### *ORDER*

On this 9th day of September 2015, it appears to the Court that:

(1) Defendant-below/Appellant Stephen J. Stinsman appeals from a Superior Court jury verdict finding him guilty of Driving Under the Influence ("DUI").[1] Stinsman raises two claims on appeal. First, Stinsman argues that the trial court erred in admitting testimony from police regarding statements obtained from him absent *Miranda* warnings. Second, Stinsman argues that the trial court erred in admitting this testimony because it was unfairly prejudicial.[2] We find no merit to Stinsman's appeal and affirm.

---

[1] 21 *Del. C.* § 4177(a).
[2] Stinsman either stipulated or conceded to all other charges brought against him.

(2) On September 28, 2012, at around 10:00 a.m., Stinsman was driving with his dog over the Delaware Memorial Bridge. As he approached the toll plaza, he struck another vehicle in the rear. Stinsman claimed that his money fell to the floor and he leaned over to retrieve it. As he returned upright, his dog blocked his view, causing him to hit the other vehicle.

(3) Shortly after the impact, Corporal Eric Roberts of the Delaware River and Bay Authority Police Department responded to the scene. While investigating, Corporal Roberts noticed that Stinsman was (1) slurring his speech, (2) not following directions;[3] (3) off balance and staggering; and (4) shaking. At the crash scene, Corporal Roberts obtained two forms of identification from Stinsman: a New Jersey identification card for "Stephen J. Stinsman" and a New Jersey driver's license for "Henry J. Stinsman, Jr." Both forms of identification had Stinsman's picture.[4] Shortly thereafter, Corporal Roberts' colleague, Officer Peyto, placed Stinsman under arrest for DUI and transported him to the police station immediately adjacent to the toll plaza.

(4) Once Stinsman arrived at the police station, Corporal Roberts began

---

[3] According to Corporal Roberts, Stinsman exited his vehicle despite instructions to the contrary and had difficulty following instructions when asked for his driver's license.

[4] Stinsman concedes that he possessed a driver's license bearing his picture but with his brother's biographical information.

asking him, "[W]ho are you, are you Henry or Stephen?"[5] Stinsman initially identified himself as Henry, but then went back and forth, identifying himself as Henry or Stephen. Stinsman eventually admitted that he was Stephen and that he used his deceased brother's birth certificate to obtain a false driver's license. Corporal Roberts then asked him to fill out a pedigree sheet "[a]nd that's as far as [the] questioning went about his identity."[6] Stinsman was ultimately indicted on five separate offenses, including DUI.

(5) On December 17, 2013, a jury trial commenced as to the charge of DUI. While presenting its case, the State presented information on how Stinsman used his deceased brother's identity to obtain a false driver's license. Although Stinsman did not object during the State's opening statement, he did object to Corporal Roberts' testimony regarding his admission on the grounds that the information was obtained in violation of his Fifth Amendment rights. Following this objection, the trial judge conducted a brief hearing outside of the jury's presence. The State argued that pedigree information, such as a detainee's identity, is exempt from *Miranda*. The trial court ruled that Stinsman's admissions regarding his identity were "consistent with Title 11, Section 1902 and . . . not violative of the Fifth Amendment right

---

[5] Appellant's Op. Br. App. at 22.
[6] Appellant's Op. Br. App. at 22.

3

against self-incrimination."[7]

(6) Stinsman next argued that information concerning his method of obtaining the false license (impersonating his deceased brother) was unfairly prejudicial under Rule 403 of the Delaware Rules of Evidence. He argued that it was not necessary in reaching a disposition in the case and "just show[ed] another layer of deviousness."[8] The State did not oppose Stinsman's objection. The trial court ruled that "it [was] unnecessarily prejudicial at this stage of the proceeding to dwell on or have further testimony on the issue that [Stinsman's] brother is deceased," but any statements up to that point in time were so minimal that they did not require a curative instruction.[9] Both the court and Stinsman's trial counsel expressly permitted the State to inquire into the issue, so long as there was no reference to Stinsman's brother as "dead" or "deceased."

(7) After the trial court's rulings, and after the jury was brought back into the court room, the following exchange occurred between the State and Corporal Roberts:

> Q: Generally speaking, did [Stinsman] have an explanation as to how he came to be in possession of two identifications with the same picture on them?
>
> A: Yes.

[7] Appellant's Op. Br. App. at 24.
[8] Appellant's Op. Br. App. at 25.
[9] Appellant's Op. Br. App. at 26.

4

Q: And generally speaking, what was his -- what did he say?

A: [Stinsman] said he used his brother's birth certificate. He said that his brother was dead and he used his brother's birth certificate to get a driver's license in his brother's name as well as register his car.[10]

(8) Stinsman did not object to the State's questions or Corporal Roberts' answers. No other reference to Stinsman's brother being deceased was made during trial. The jury returned a guilty verdict and Stinsman was convicted of all charges.

(9) On December 26, 2013, Stinsman filed a motion for a new trial. He argued that the State introduced testimony obtained in violation of his Fifth Amendment rights. He further argued that "the effect of [the] statements caused prejudice with regard to [the DUI] charge . . . ."[11] The trial court denied Stinsman's motion.[12] This appeal followed.

(10) Stinsman first argues that the trial court erred by allowing testimony regarding his admission to Corporal Roberts because it was obtained while he was under arrest and before being advised of his *Miranda* rights, which violated his Fifth Amendment rights.

(11) This Court reviews a trial court's decision to admit or exclude evidence

---

[10] Appellant's Op. Br. App. at 27.

[11] Appellant's Op. Br. App. at 46.

[12] The court held that Stinsman's admissions regarding his identity were admissible pursuant to 11 *Del. C.* § 1902. The court further held that Stinsman had not demonstrated that the testimony complained of caused any prejudice.

5

for abuse of discretion.[13] Any claim that the trial judge erred in applying the law is reviewed *de novo*.[14]

(12) Law enforcement officers must advise a person in custody of his *Miranda* rights prior to interrogation about "matters that may tend to incriminate him."[15] There is, however, "an exception to *Miranda* for booking-type information."[16] Pedigree information, such as names and dates of birth, "falls within the ambit of booking-type information."[17] Pedigree information, thus, is "a recognized exception to *Miranda*, even though [it] also further[s] the police's investigation."[18]

(13) In *Quintero v. State*, the defendant, a 28 year-old man, was having a sexual relationship with a 15 year-old girl.[19] After the defendant was arrested for rape, a police officer requested pedigree information from him, including his date of birth.[20] At trial, the defendant objected when the State tried to introduce this information on the basis that the defendant had not been given *Miranda* warnings prior to pedigree questioning.[21] The trial court overruled the defendant's objection

---

[13] *Spencer v. Wal-Mart Stores E., LP*, 930 A.2d 881, 886 (Del. 2007).
[14] *Miller v. State Farm Mut. Auto. Ins. Co.*, 993 A.2d 1049, 1053 (Del. 2010).
[15] *Laury v. State*, 260 A.2d 907, 908 n.* (Del. 1969) (citing *Miranda v. Arizona*, 384 U.S. 436 (1966)).
[16] *Herring v. State*, 2006 WL 3062899, at *2 (Del. Oct. 30, 2006).
[17] *Id.*
[18] *Id.*
[19] *Quintero v. State*, 2007 WL 2827680, at *1 (Del. Oct. 1, 2007).
[20] *Id.*
[21] *Id.*

6

and noted that case law indicated that pedigree information was outside the scope of *Miranda*.[22] On appeal, the defendant argued that the officer should not have been able to testify about the defendant's date of birth because it was an essential element of the offense and was obtained without giving defendant a *Miranda* warning.[23] This Court held that such questioning "falls squarely within the booking exception to *Miranda*."[24] This Court stated that "asking [defendant] for his date of birth is the type of booking question reasonably designed to ensure that the officer had arrested the correct individual."[25] This Court further held that "the only rational conclusion on these facts is that the police officer asked the question as a matter of routine."[26]

(14) This Court issued a similar ruling in *Herring v. State*.[27] The defendant in *Herring* filed a motion to suppress evidence obtained from his residence on the basis that he divulged his address while under arrest and prior to receiving *Miranda* warnings.[28] The trial court denied the defendant's motion.[29] On appeal, we found the questioning at issue was "normally and reasonably related to police administrative

---

[22] *Id.*
[23] *Quintero,* 2007 WL 2827680, at *2.
[24] *Id.*
[25] *Id.*
[26] *Id.*
[27] *Herring v. State*, 2006 WL 3062899, at *2 (Del. Oct. 30, 2006).
[28] *Id.* at *1.
[29] *Id.*

concerns attendant to arrest and custody."[30] We held that this inquiry fell within the exception to *Miranda* "even though [it] also furthered the police's investigation."[31]

(15) Our reasoning in *Quintero* and *Herring* is directly applicable to the case at bar as Corporal Roberts' inquiry into Stinsman's identity was within the booking procedure exception to *Miranda*. Stinsman was under arrest for DUI, but the officers did not know his true identity. Corporal Roberts' questioning, which was accompanied by a pedigree sheet, was a normal and reasonable procedure related to processing Stinsman once placed in custody. It is true that this information aided the police's investigation, but that information was not necessary to determine that Stinsman possessed a false identification. Stinsman had two identification cards with his picture but different biographical descriptions.[32] There are no facts that move Corporal Roberts' inquiry out of the booking procedure exception.[33] Accordingly, *Miranda* did not apply and Stinsman's Fifth Amendment rights were not violated.

(16) Stinsman next argues that the testimony regarding how he obtained the false license was unfairly prejudicial. He further contends that the State disregarded

---

[30] *Id.* at *2.

[31] *Herring*, 2006 WL 3062899, at *2.

[32] Stinsman concedes that possessing two inconsistent identifications is *prima facie* proof that he possessed a false identification.

[33] Stinsman claims that determining how he obtained the false identification was outside standard booking procedure. Stinsman cannot, however, reconcile the fact that the uncontradicted testimony in the record shows that Stinsman volunteered this information in response to Corporal Roberts' attempts to confirm his identity.

8

the trial court's ruling when it elicited testimony on this issue.[34]

(17) Rule 403 of the Delaware Rules of Evidence states that relevant evidence may be excluded "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues or misleading the jury, or by considerations of undue delay, waste of time or needless presentation of cumulative evidence."[35] Deciding whether the probative value of the evidence is substantially outweighed by unfair prejudice "falls particularly within the discretion of the trial judge."[36]

(18) "[W]here defense counsel fails to raise any objection at trial to alleged prosecutorial misconduct and the trial judge fails to intervene *sua sponte*, we review claims of prosecutorial misconduct on appeal for plain error."[37] We employ a three-step analysis for plain error review.[38] First, we review the record *de novo* to determine if there was prosecutorial misconduct.[39] "If we determine that no misconduct occurred, our analysis ends."[40] If there was misconduct, we then apply

---

[34] Stinsman does not specifically claim that prosecutorial misconduct occurred in his motion for a new trial or on appeal. The State, however, believes Stinsman raised this claim in his opening brief.
[35] D.R.E. 403.
[36] *Trowbridge v. State*, 1996 WL 145788, at *2 (Del. Mar. 4, 1996) (quoting *Lynch v. State*, 588 A.2d 1138, 1141 (Del. 1991)).
[37] *Baker v. State*, 906 A.2d 139, 151 (Del. 2006).
[38] *Id.* at 150.
[39] *Id.*
[40] *Id.*

the *Wainwright* standard.[41] If plain error is found under the *Wainwright* standard, we will reverse the conviction.[42] If plain error is not found, we then apply the *Hunter* analysis to determine if there were repetitive errors that "cast doubt on the integrity of the judicial process."[43]

(19) We find no prosecutorial misconduct based on the facts of this case. The trial court did not rule that the State was prohibited from inquiring into how Stinsman obtained the false driver's license. The trial court merely stated that it was unnecessary to discuss the fact that Stinsman's brother was deceased. The prosecutor then asked Corporal Roberts a very general question and he mentioned that Stinsman's brother was deceased in response. There was no specific prompt in the State's question that required Corporal Roberts to respond the way that he did. And the State did not mention or elicit any other testimony for the remainder of the trial regarding the fact that Stinsman's brother was deceased. The prosecutor questioned the witness in a way that was expressly permitted by the trial judge and Stinsman's

---

[41] *Baker*, 906 A.2d at 150. Under the *Wainwright* standard:

> [T]he error complained of must be so clearly prejudicial to substantial rights as to jeopardize the fairness and integrity of the trial process. Furthermore, the doctrine of plain error is limited to material defects which are apparent on the face of the record, which are basic, serious, and fundamental in their character, and which clearly deprive an accused of a substantial right, or which clearly show manifest injustice.

*Id.* (quoting *Wainright v. State*, 504 A.2d 1096, 1100 (Del. 1986)).
[42] *Id.*
[43] *Id.*

10

trial counsel. The result was a simple error on the part of the witness. Accordingly, we do not find that any prosecutorial misconduct occurred.

(20) Even if we were to find the prosecutor's question to have been inappropriate, Stinsman would not prevail on the remaining steps of the plain error analysis. The trial judge found previous references to Stinsman's deceased brother to be materially insignificant. We fail to see how this passing reference somehow cast doubt on the integrity of the trial process or created "manifest injustice."[44] Thus, Stinsman's second claim lacks merit.

NOW, THEREFORE, IT IS ORDERED that the judgment of the Superior Court is **AFFIRMED**.

BY THE COURT:

_____
Justice

---

[44] *See Baker*, 906 A.2d at 150.

11